Okay, SmileDirectClub versus Tanja Battle. General Penson, will you speak with us? Thank you, Chief Judge Pryor, and may it please the court. This court has jurisdiction to hear appeals from the class of orders denying state action immunity to state officials on legal grounds. That includes the order below, and we think that order should be reversed because the orthodontic scan rule put into effect by Georgia's governor is state action by any measure. First, on jurisdiction, if immediate appeals aren't permitted when state action immunity is denied to state officials, it imposes the very harms that immunity is supposed to protect against. Most concretely, state officials charged with helping the state regulate will have to consider the threat of full antitrust discovery and trials every time they consider regulating, which allows federal antitrust scrutiny to improperly influence whether and how the state exercises its regulatory power. At a fundamental level, proceeding with antitrust litigation is that federal antitrust scrutiny that state action immunity is supposed to prevent from intruding on the state's sovereign discretion to regulate. Because that sovereign interest is imperiled by not allowing immediate appeal, and also because orders denying state officials state action immunity are both conclusive and separate from the antitrust merits, those orders are final decisions appealable under the collateral order doctrine. As for the state action question in this case, Smile Direct Club is asking a federal court to invalidate a provision of the state's administrative code that was expressly put into effect by the state's governor. Under Hoover v. Bronwyn, that means the rule automatically qualifies as state action, because it's undisputed that the governor himself had an exercise of the sole authority to actually put the rule into effect. That's all Hoover requires to attribute the rule to governors, and just like legislation, there's no question that the governor's official actions are state action. Judge Wilson, do you have any questions? No questions. Judge Martin. I was trying to find you on the screen. Good morning, I have just a quick series of questions. I'm interested in this because I used to, in another life, represent the professional boards, and I have some questions about the certification of active supervision, which is an animal that did not exist at the time I represented the boards. And did the governor ever meet in person with the dentistry board about this regulation, change in regulation? So Judge Martin, we're still at the pleading stage of this case, so there's nothing in the record at this point or on the allegations with respect to whether the governor met with the board. That's what we have are Smile Direct's allegations in their complaint, and the certificate itself, which shows that the governor applied his authority under the PRRA. So it just doesn't seem like, I mean, you have a very strong statement that this is, this regulation emanated from the governor, and am I misunderstanding that, or that's your position? No, you're not. That's our position. Okay. Well, you didn't really say that in this supervision, does he? Well, so a couple things. First of all, first and foremost, it's the PRRA and the statutory authority and duty that the governor has under that statute that requires the governor to approve every new rule that goes into effect. So it says as a matter of state law, it is sort of put at the governor's feet or his responsibility. But the certificate does say that he approves this rule expressly, and he does so because it's within the board's authority as granted by clearly articulated state policy. Did you have any other questions, Judge Mark? No, thank you. Judge David? Good morning, Mr. Pinson. How do you think that so-called state action immunity under the Sherman Act is really an immunity, that is a freedom from suit, as opposed to a defense to a claim? Judge Jordan, a couple things. So first off, implicit in your question is the notion that state action immunity is, I agree with you, a recognition that the Sherman Act prohibits private combinations and restraint of trade and does not get at or prohibit state regulation. But that fact, the fact that the immunity is not textually expressed in the Sherman Act doesn't mean that it's not an immunity or not an immunity from suit. Second... In what other area of law do we create statutory immunities that don't exist in the statute? Well, qualified immunity doesn't exist in the statute, and of course, that's immediately appealable. Right, but that's because, and this will be my last point or question, that's because the Supreme Court has said that absolute and qualified immunity create a freedom from suit, right? But for example, or in contrast, when you're dealing with the Federal Tort Claims Act and the judgment bar, that doesn't create an immunity from suit that allows for interlocutory appeal even though very important government interests are involved. So why do you fall on one side of the ledger and not the other? So Judge Jordan, I guess I disagree with your premise that immunity from suit is the dividing line, and there's a couple reasons for that. First of all, the court has granted immediate appeals in a couple of different cases where immunity from of the issue that's being appealed. We cited these both in our brief, but Stack is a case about orders denying bail. Sell versus United States is about orders requiring defendants to be medicated to be competent for trial. So the immunity from suit label is not dispositive in the analysis. And then, of course, the Supreme Court's decisions, particularly its more recent ones in cases like digital equipment and Mohawk and will have denied that the sort of word games or rhetorical question about immunity from suit is what guides the analysis. It's still prior. Interested in drawing the line between public and private actors for purposes of the collateral order doctrine. I'm going to give you the features of a hypothetical dental board whose you to tell me whether the board members are public or private. OK, so first, suppose that state law doesn't make it clear whether the state considers the defendants to be public actors and assume the board is composed of actively practicing dentists who are elected to the board by other dentists, but they can be removed for cause by the governor. And third, assume that the board can pass rules that take effect so long as they are not vetoed by a state commission. Would those board members be public or private for purposes of the collateral order doctrine and appeal like this one? So first of all, I just have to caveat that's different from this board, but taking the facts of your hypothetical, I think that that board would would likely qualify as a state board or state officials that could immediately appeal under the collateral order doctrine. Well, how do we let me ask you this? How do we decide whether they qualify for purposes of the collateral order doctrine as opposed to the merit, the I don't know if you call it the merits, but the state action immunity question? Sure, I those those lines that you draw between the two, I think are serve different purposes. And I don't think you can draw the same line, for instance, like the Fifth Circuit did in its Louisiana real estate case. The the line that the court drew in dental examiners is about a concern that active market participants on a board are likely to further private interest. Right. But that's not the question for the collateral order doctrine. The question is, when are the substantial public interests here in peril when you sue particular defendants versus others? I made a mistake. And I skipped Judge Rosenbaum and seniority, which was my error, for which I apologize to Judge Rosenbaum. Not a problem. Don't worry about it. Thank you, Mr. Pinson. I was wondering, you know, how the board argues that mid cows active supervision prong requires only that state law provides review mechanisms. And that's it. But it seems to me like the discussion in dental examiners requires us to engage in a more fact bound inquiry that we can't really resolve just by looking at the face of state law. And I wonder if you might respond to that and tell me what you think I'm missing there. Sure. Judge Rosenbaum, I think it it's not as neat and clean as it's always only state law and never a factual inquiry. But the the court's elements in dental examiners don't necessarily require the kind of searching or probing factual inquiry that small direct asks for. So just taking through the factors, the obviously the fact that the governor's market participant or not, that's that's not a question that is that issue. The mere potential question, whether the scheme gives mere potential or actually requires the state to make a decision. That's plainly a question that can be answered by state law. And that's what we have here, a PRA that I try to interrupt. But I guess my question for you is more aren't we required to do more, though, than just look on the surface at what the law is and what the procedures are? Don't we have to look as a matter of fact as to what was actually done? Don't we have to go beyond the surface is what I'm asking you? I don't I don't think that's always true. In a case like where the the statutory regime doesn't require it, then, yes, the Supreme Court says you have to look to see whether the supervisor actually engaged with the inquiry on its substance. That's not necessarily the case. And certainly we cite cases in our brief from other circuits where the circuits looked at the statutory scheme alone and said that that provides sufficient active supervision. And even in court, the court said that it would not be enough if there were evidence that sometimes the state sort of didn't look as carefully or there was intermittent lapse in review. Right. So that suggests that you don't need that factual inquiry. Good morning, Mr. Pinson. I have a question for you that I'll ask in part in my capacity as an alumnus of the Advisory Committee on Appellate Rules. Isn't the isn't the pretty unmistakable implication of Mohawk that the court has said, given the given the amendment to the Rules Enabling Act to empower the rules committees to, you know, divine specific instances of finality through rulemaking, that courts should be pretty slow or should narrowly construe their own authority to create these exceptions judicially? And if so, don't you need to show us pretty clearly that this issue is both separable from the merits and effectively unreviewable on appeal? And if it's not absolutely an immunity from suit, if it's not clear from Parker that it's not or that it is if it's not clear from Parker that it's an immunity from suit, why wouldn't we just sort of sit tight and see if the Rules Committee wants to do something about this? Judge Newsom, so as to the first part of your question, I don't disagree with you that I think Mohawk says this is a narrow class and we think that there's a rule there that allows the court to expand it. So we have to be careful about it. I don't disagree with that premise. I do think that state action immunity is a clear case, both on separability and effective unreviewability. And I'll take effective unreviewability first. I don't think, again, that immunity from suit is the dispositive question, other than the fact that when you look to effective unreviewability, if it turns out that the public interests at play or that are imperiled by delaying review are so important, effectively what you're doing at that point is giving an immunity from suit. But I want to make sure I get this point out. The state action immunity is supposed to protect the state's interest in regulating free from the influence of federal antitrust scrutiny. If state officials don't have the chance to immediately appeal when that protection is denied, I think that lets the federal antitrust laws put a huge thumb on the scale of the state's regulatory power, because it means that every time they regulate, they cannot bring it up. Yes. What about, just in piggybacking off some of the questions that we've talked about, the active supervision prong and how the certification from the governor certainly leaves open the question of whether that active supervision was exercised, why is Judge Ray not correct when he says that a definitive ruling on Parker immunity would be as discoveries develop? He will revisit this issue, presumably at the summary judgment stage. Why are we going to interfere with that ruling? Judge Branch, this order is every bit as conclusive as orders that are granted immediate appeal in the qualified immunity context, because it's still a legal determination that on these allegations, the defendants are not in fact, the district court's order says, and the court found that the antitrust claim as pleaded survived the motion to dismiss on Parker immunity grounds. That's a legal determination that the court is not likely to change as the case proceeds. If we get to summary judgment, the question will be whether there's a factual dispute that their allegations have been met, not anything about the legal framework that the court conclusively decided at the motion to dismiss stage. Judge Graham? Mohawk says that the third Cohen question simply cannot be answered without a judgment about the value of the interest that will be lost through the rigorous application of a final judgment requirement. I think you and the amicus states argue that the state, the state authority and the state avoidance of suit in these areas is an important interest. But although that's kind of intuitively appealing, especially as someone who used to defend the state, the state, the state is subject to lawsuits in a wide range of areas. Are you looking for some sort of rule that states can't have any of their processes interrupted by litigation? Obviously, you can't be looking for that. But what draws the line between this and all the cases where states are subject to lawsuits? You're right, Judge Grant, we're not asking for that kind of broader rule about states being subject to the suit generally. It's really, frankly, about antitrust law, both antitrust law and the severe burden that antitrust suits pose and the effects on behavior and the state's regulatory power that the threat of those suits cause. Both the Supreme Court in Twombly and this court sitting in bank in Quality Auto, they take seriously the problem of potential antitrust discovery having effects on behavior. This court called antitrust discovery an expensive and settlement inducing quagmire. So it's that threat. And the fact that antitrust litigation in particular is an ever present threat, particularly for professional licensing boards whose sort of very nature is to regulate in ways that limit competition. That threat is going to be around every corner. So I want to ask about another part of the third prong. You've mentioned how the discovery and the burden on the state puts a thumb on the scale. I think those were your words with regard to the state's interest. And correct me if I'm wrong when you answer. As I understand the third prong of the test, again, putting aside immunity from suit and assuming that you're right, that that's not the right question, that the question is instead, quote, whether delaying review until the entry of a final judgment would imperil a substantial public interest or some particular value or whether the value of the interest would be lost if the collateral order doctrine were not applied. Even given a quagmire, even given the difficulty in discovery and maybe the burden that would cause to a state here, how can we say that the interest is imperiled or lost if we do not allow interlocutory review? That is a very, very high burden to say that it is gone, which is why the immunity from suit sort of plays in because the immunity, the second you're in suit, you lose it every second you're still in there. And without that, how can we say that the interest of the vindicating or losing that interest in any particular case as it is about the improper influence of this specter of scrutiny going forward for every case, for what the state does regulating on a day-to-day basis, right? So it has that effect, not just in the case where, you know, ultimately they can be vindicated on appeal. It means that federal antitrust scrutiny going forward influences how states regulate in every case because they have to face that threat of litigation when they do so. That's the arm. Good morning. I just have a couple of questions with regards to the Georgia Board of Dentistry. Does that board exist separate and apart from a statute? No. Is the board an agent or an instrumentality of the state? Yes. Is the members, I understand, are appointed by the governor. Can they also be removed by the governor? They can be. Is rule making done by the board? The board proposes those rules. And are they subject to the APA or Georgia's equivalent of the APA? They are. That's it. Thank you. Judge Brasham? I don't have any questions. Okay. Why don't you take a half minute to wrap it up? Sure. I'll begin where I started and what I've tried to hammer home through this argument, which is that opening up state officials to the potential for this uniquely burdensome antitrust discovery and trial every time they try to regulate in the public interest allows federal antitrust scrutiny to have the very influence on state regulatory power that state action immunity is supposed to protect against. Okay. Oh, I forgot Judge Choflat. Oh, I am so sorry. He just joined us a moment ago and I forgot he was with us. Judge Choflat, you're muted. Do you have a question? Do you have any questions? No questions. Okay. I apologize. Two big errors this morning. Um, Judge, uh, so, um, Mr. Kashtan, um, uh, we'll hear from you next. Can you hear me, Your Honor? Yes. Thank you. May it please the court. I'm Jeff Kashtan of King and Spalding. I represent the jurisdictional issue section 1291 grants federal courts of appeals jurisdiction to review final decisions of the district courts generally to be considered final. The decision must be one that ends the litigation on the merits and leaves nothing more for the court to do but exercise the judgment. But in Cohen versus beneficial, the Supreme Court, excuse me, panel looks like we lost Mr. Pinson. Okay. We need to, we need to stop the clock. Yeah, we need to, uh, get the Georgia SG back on the line. I apologize, Mr. Kashtan. We're going to start, we'll start you over again at 15 minutes. Um, you barely got going. Thank you, Your Honor. Okay. I put, I presume, Your Honor, we wait for some word from the courtroom deputy that we have Mr. Pinson back on. That's right. Okay. It occasionally happens in these same arguments. Understood. Nothing's perfect. We're doing the best we can. Yeah, I do admire the virtual background. Uh, it's, it's a showstopper for us. Mr. Pinson is attempting to come back into the meeting. Okay. Your Honor, Mr. Pinson will be on shortly. He had a power surge and so he's rebooting now. So he said give him about a minute or two and he'll be back on. This wouldn't have happened in the grant regime. Well, the, the advantage of the zooms is that we, we noticed that a lot sooner when someone drops off than when we were doing telephone only arguments at the beginning of the pandemic. Sometimes we would be going on with an argument and not realize someone's not there and it might be a judge, might be an advocate. It'll be great when we're back in person at the right time. Senator, the better. Well, I will confide with the court that when this case was argued to the original panel, it was telephonic. And then when I knew this was going to be a zoom argument, I spent quite a bit of time trying to figure out how I was going to stand up for you and be on zoom because you could actually see us. And someone said to me, well, the judges will be sitting down. And I said, well, they're always sitting down. Let's see if we can get Mr. General. Let Mr. Pinson back in. Okay, General Pinson, thank you for getting back in. Hopefully that won't happen again. We're going to let Mr. Cashton start over. When we left off, Your Honor, we had picked up the point that in Cohen, the Supreme Court had identified a narrow class of decisions that do not terminate the litigation, but which nonetheless may be treated as final under Section 1291 to permit a prejudgment appeal as of right. Next, the Supreme Court has emphasized that the conditions to qualify for prejudgment collateral review are stringent and must be kept so, counseling that the class of the collaterally appealable prejudgment orders must remain narrow and selective. Now, since the creation of the Cohen doctrine, the Supreme Court has addressed 13 cases, approximately, involving prejudgment orders that directly involved legal arguments to end civil litigation or criminal trials, as opposed to interlocutory orders that raise other issues. And so when Mr. Pinson talks about cell or stack or Mohawk, those cases don't talk about a right to avoid trial because those cases had to do with interlocutory issues, not about ending a trial, attorney-client privilege, medication of somebody, whether bails should be revoked. But in the cases where the Supreme Court has addressed the argument that the case should end, in every one of those cases, including many of those that involve the issue of immunity, the Supreme Court has made clear that in determining whether a prejudgment order is effectively unreviewable, a critical question is whether the essence of the right at issue is a right to be free from the burdens of trial, rather than merely a right to avoid liability on the merits. And because all of us litigators have heard that language, the court has had to caution in digital equipment that claims of a right not to be tried must be viewed with skepticism, if not a jaundiced eye. Justice Scalia made the point clearly for the court in Midland Asphalt. Judge Wilson, do you have a question? Judge Martin, do you have a question? I was impressed by Ms. Julian's brief about the expense to private parties in litigating against the state and two appeals and all that. So I really just wanted to thank your client for funding the education of the court on this topic. No questions. Just to be clear, Your Honor, our client had nothing to do with the brief that Ms. Julian submitted. But you're right, it made a very important point that mirrors the point that the courts have made over the years. The impact of the lack of avoiding the final judgment rule and allowing piecemeal appeal, it causes a tremendous amount of injustice in the system through delay. I see on the horizon the third year anniversary of the filing of this case coming up. It was filed in May of 2018, and we haven't gotten past the motion to dismiss stage. Judge Stewart. Do you see a basis for a difference between allowing interlocutory appeals in this scenario, distinguished from state entities or boards and private individuals or actors? Or should they all be treated the same? Well, I think they all should be treated the same, Your Honor, because the Parker case created an immunity from suit rather than an immunity from trial. The substantial interest that's at issue in Parker is that state legislation that regulates their economies are not struck down by the Sherman Act because the court held in Parker, the Sherman Act doesn't apply to state governments. Having said that, I think it's a fair point, Your Honor, and the Fifth Circuit makes this point as well as the Tenth Circuit, that where private parties are involved, where private actors are involved, the burdens that are pointed to by the state, none of which are ever discussed in the Parker opinion, by the way. But those burdens certainly don't justify preventing private parties from having to undergo litigation. I have no questions at this time. Thank you. Let's see. Judge Jill Pryor. Mr. Kasten, looking at the second Cohen prong, the separability from the merits, I think your opponent makes an interesting argument about the different relationships that we look at in the inquiry, in the state action inquiry versus the antitrust merits inquiry. Would you explain why you think that those things are inseparable? Yes, Your Honor. I think there's two points regarding the merits issue. The first, of course, is that, as the Supreme Court said in a different context in the Morrison versus National Australia Bank case, and I'll paraphrase, asking what conduct a statute reaches is asking what conduct a statute prohibits, and that is a merits question. In the Morrison case, Justice Scalia was talking about the Securities Exchange Act, but that's precisely what's going on in Parker. In Parker, the question was, what conduct does the Sherman Act Section 1 reach? That's a merits question. But beyond that, Your Honor is exactly right that where you have the Mid-Cal test being applied, and what you have to ask is whether there's active supervision of conduct that is restraining trade, and you need to ask the question, does that conduct comport with the state's economic policy? Well, in order to make that inquiry, you have to understand what is the restraint? What effect on competition does the restraint have? How does that restraint impact the state's economic policy, and does the state nonetheless endorse that? That's what Parker and its progeny are looking for, confirmation that what's going on is state action is endorsed by the state and reflects the state's economic policy. If you don't understand the restraint and how it affects competition, which is the merits ultimately of an antitrust case, you can't understand whether the active supervision problem has even been applied accurately. Judge Mason? No questions for Mr. Kennedy. Judge Branch? No questions. Judge Grant? A follow-up to that last discussion, isn't it really about who's taking the action rather than what the action is? I mean, to me, I speak only for myself, it's pretty clear that the rule that's being challenged here is anti-competitive. The question is whether the rule is allowed because the state is making it or because these individual market participants are making it. How really is that a merits determination rather than a party determination of sorts? Well, it's a merits question, Your Honor, because it goes to the scope of the statute. Let me give you an example from this case. There are two other grounds on a motion to dismiss filed in this case that do not address the competitive effect of the restraint. First, the board and the board members argued below that they were a single entity, subject to the American Needle doctrine that they should be treated as a single entity. That only went into the scope of the actor. Who are they? Are they a single entity or not? They're a single entity. They're not subject to the Sherman Act, Section 1. The court just rejected that argument and said these are multiple actors. The other argument they made was a trombling argument, that the action that was alleged here, the passing of this rule, they argued, was not a conspiracy, was not concerted action, and instead was unilateral action. Again, that doesn't involve any analysis of the competitive effect. That was a question of whether the conduct at issue was within the scope. Those decisions are exactly like the Parker decision, and there's no way to distinguish them, and you're going to have to then, if the court wants to allow this immediate interlocutory appeal of Parker issues going forward, you're going to have to allow the state to appeal every trombley decision where they've argued that there's no conspiracy, because it doesn't go to effect. It goes to the conduct itself, the nature of the conduct. I'd like to ask about the first Cohen factor. Imagine for a moment this was a qualified immunity case rather than a Parker immunity case, and the district court in its order stated that in response to a motion to dismiss based solely on qualified immunity, I am denying the motion at this stage because the allegations are insufficient, but we'll revisit this at summary judgment where there'll be more factual development. Would that order be immediately appealable? At a motion to dismiss stage, I think it would be, Your Honor. I guess my question then is, and I agree with you, by the way, if that's the case, then how does this not meet the first Cohen factor? And I'm not talking about the third and some others, just solely on the first. I understand what you're saying, Your Honor, and I think here's the answer. I think that once the court decided that qualified immunity cases satisfied the standard for immediate interlocutory appeal because that class of cases was a right to avoid being tried at all. Once that was decided, that answers the question at the motion to dismiss stage. The Supreme Court did make clear that if, on summary judgment, the only issue that remains are resolution of fact questions, even in the qualified immunity context, that would not be immediately appealable. But where it was the legal question, it was. The difference here is that we're now, if you're starting from square one, you're trying to evaluate the class of cases for state action immunity. You have to ask yourself, will most of the cases that involve the state action immunity litigation in this circuit involve the pure legal question like you're talking about? Or will they end up being decided on the ultimate factual resolution of the sort of the district court identified here? In other words, when you look at the weight of the class of cases, where do they fall? And I would argue to you that they fall on needing factual development. Counsel, I have a question for you regarding the Georgia Board of Dentistry. If the board was composed instead of, let's say, five lawyers and five radiologists and one at large business person, would that be a anything that they did to regulate dentistry? Would that be a violation of the Sherman Act? Well, under North Carolina Dental, if the board was composed in that way, so there weren't active market participants regulating their own industry, then the only question you'd have to ask would be whether they were acting pursuant to a clearly articulated state policy. You wouldn't have to search for active supervision. But what the Supreme Court expressly held in North Carolina Board of Dental is that where the state has chosen to regulate the professional practices with a board that is a majority of private market participants, then that puts them into the mid-cal inquiry and they have to satisfy both. How do you address the fact that under the statute that gives the governor the ability to veto a particular rule that a particular regulatory board proposes, how is that not an act of supervision? Because in order for the rule to become law or to become in effect, it has to meet the requirement of the Georgia APA statute and also has to be approved by the governor. Well, Your Honor, in dental examiners, the Supreme Court explained that while adequacy of supervision will depend on all the circumstances of the case, there are a few constant requirements of active supervision, all of which are necessary and none of which alone are sufficient to show active supervision. The board members have only pointed to one of the constant requirements identified by the court, the state's power, they say the governor's power to veto the particular decision of the board. And they argue that that one element makes the exercise by the governor rather than the board and mid-cal no longer applies. This extra jurisdiction that the board wants to apply would read North Carolina dental examiners out of existence. Can we go back to the, I want to go back to the appellate jurisdiction issue. Here's, I think you make a persuasive argument on appellate jurisdiction, but here's my concern. I want you to address it. It's been the law in this circuit for many decades that appeals like this, we have jurisdiction over them and we can consider them. And I didn't see a persuasive case in the briefs that we should overturn that precedent, get rid of that precedent. We consider, I think, three factors when considering to overturn our previous precedents. We look at whether the previous precedent was plainly wrong. We look at reliance interest and we look at whether it was a workable rule. What do you say about how those factors apply here? Well, number one, Judge Brasher, I would argue that I think it was the decision, the previous decision was plainly wrong. And I think that over time, the Supreme Court has made clear, clearer than it did at the time this court adopted this rule, that Cohen jurisdiction should be narrowly interpreted and needs to really be stringent in the application. I think, however, another point would be made is that this circuit has a reliance interest, a strong reliance interest, on this important and critical distinction between immunities from suit and defenses to liability. And if you were to adopt the view that that line is no longer important, which you really have to do to allow Parker stay action cases to be appealed, then you're going to have to revisit more cases in this circuit than you otherwise would have. Let me give you a specific example. This court has made clear that in state sovereign immunity cases, this immunity from suit distinction is dispositive. So under Georgia and Alabama law, this court has held that sovereign immunity decisions are immediately appealable because they are immunities from suit. But under Florida law, this court has held that state sovereign immunity decisions are not immediately appealable. This court in 2016, in the Parker versus American Traffic Solutions case, reconfirmed that view, that under Florida, immunity from defense to liability, it's not immediately appealable. You'd have to revisit all of that case law if you go the way the state or the board members are proposing here. Judge Choflat, you're mute. Do you have any questions? No questions, Chief. OK. Judge Bransher, did you think you got an answer to your question about the three factors? I guess. Well, I'd like to follow up on that, I suppose. I mean, what what makes the rule that we've adopted previously unworkable? I mean, I've looked at the number of cases that have come up on this file review. There are very few of them. They seem to be resolved in the regular order of things. Why? Why do we need to undo this precedent? I guess I would say. Well, I would say, Your Honor, that because failing to undo that precedent, precedent, number one, puts in place a standard that is inaccurate, that could be applied to other cases in the circuit. And more importantly, for the actual antitrust cases that are being litigated, the failure to follow the final judgment rule and to allow piecemeal appeals creates an incredible hardship to the principles and the efficiency of litigation that the finality rule is intended to protect. In our case alone, as I mentioned, we're almost three years in. We have not yet had any discovery. If the case were to be remanded on the ground that either there's no jurisdiction or the district court properly decided that there's no state action immunity here, the court has invited the board members to file for a summary judgment motion on state action immunity. And under this court's precedent, they'll come back up again if they lose that decision. We'll have more delay. A company like SmileDirectClub, which is trying to expand competition in Georgia to promote a new way of competing, is damaged by that delay. OK. Do any other judges have any follow ups that they feel they need to ask? OK. Take a half minute to wrap up, Mr. Cashton, before we give your amicus some time. The court in Laurel Lino, Laurel Lines, excuse me, made clear that it's always true that there's value in triumphing before trial rather than after it. And the Supreme Court has declined to find the costs associated with unnecessary litigation to be enough to warrant allowing the immediate appeal of a pretrial order. Instead, the court said, we have insisted that the right asserted be one that is essentially destroyed if its vindication must be postponed until trial is completed. Here, the state's interest in not having the Sherman Act applied to it so that it can pursue its own state policy is not at risk of being destroyed if it has to wait until final judgment to appeal. The Parker case itself came to the court after appeal for those reasons. And for the reasons explained by the panel regarding application of dental examiners, we would ask this court to affirm either to dismiss the appeal for lack of jurisdiction or affirm the denial of state action doctrine. OK, Mr. Mintz, because Mr. Mintz, you only have five minutes as an amicus. I'm going to do what I did for Mr. Clement on rebuttal. And that is not assume everybody has a question and go through questions from everybody. But any judge can jump in with a question, try to respect each other in doing so. But I don't want that five minutes to turn into 15 by trying to ask everybody, get everyone. So, Mr. Mintz, if you could start. Mr. Mintz, we can't hear you. OK. Just barely. And there's a bit of an audio problem. You need to find wherever your microphone is. OK, maybe that's better. That's better. OK, I'll just close up here. I'd like to amplify on two points. Federal order of appeal ability made in showing why you believe the we're really having trouble. Oh, I'm sorry. When you state when you keep your face directly at the microphone, we hear much better. So you might not want to move your head. OK. Is your said than done? Yeah. So, Mr. Mr. This is why we think the commuter transport. It's plainly wrong. Mr. Cashton gave you the citation to Morrison versus National Australia Bank, which stands for the proposition that the reach of a statute is a merits question. And that's what Parker was about. Parker was about the reach of the Sherman Act. That is what conduct falls within the Sherman Act and what conduct does not. I'd like to give you an additional citation, which is the Fifth Circuit's decision in Louisiana Board of Real Estate Appraisers. Page 605. Similarly, the Fifth Circuit wrote interlocutory ruling on state act community by this court would inevitably affect the question of liability. So that's why we we think that the second collateral order requirement is not satisfied. Because it goes to the merits, the breach of the statute is a merits question on the third pick up on Judge Lux question. The interest that the state action doctrine protects is to displace competition. That's what the Supreme Court has said over and over again. That is indicated on review of a final determination. The dental examiner's case itself was a state action on review of a final FTC order. And the Supreme Court and dental examiners never suggested in any state interest was somehow destroyed by the fact that the state action doctrine was considered an appeal of a final order. Requirement of non reviewability satisfied. I'd also now like to respond to Mr. Pinson's argument about discovery and the burdensomeness of discovery and antitrust cases. Supreme Court has never said that the state action from the burdens of discovery. I represent the government and government employees and we don't hold that view. 107 I think the Supreme Court pretty clearly rejected the argument that the burdens of trial or discovery justify collateral order appeal. If if concerns about discovery or the cost of litigation were so weighty. 11th Amendment immunity whenever they face a suit by the federal government. Every time you turn your head, Mr. Metz, we don't hear you. OK, well, we'll try to try to keep straight forward then again. So anyway, so the the the the burdens, the so-called burdens of discovery or the cost of litigation have never been the basis for the Supreme Court to allow a collateral order appeal. I'd like to make one or two very brief points on the state action merits. First, on this notion that courts should only review the mechanism in place for supervision. That argument is not consistent with longstanding Supreme Court precedent. Tycor and Patrick, which teaches that the mere existence of a new mechanism is insufficient. We think the panel decided. Let me give you a quotation from Tycor. The absence of active, in fact, state action immunity. So it's not a question of simply what mechanisms are in place. The supervisor, who is the governor in this case or the former governor, has to actually use those mechanisms and conduct an independent and substantive rule in practice. There was also a question about the certification of that the governor issued in this case. In our view, the certification is probably the best evidence, at least at the motion to dismiss stage for showing that the governor did not, in fact, engage a due active supervision here. Can I ask you a question about that? Which is one thing that bothers me about this case is it seems like you're suggesting that the governor would have to be deposed. A federal judge would have to evaluate whether the governor really spent a lot of time, whether he really supervised. What do you say about that concern? I don't think that would be true in the vast majority of cases. What about this case? Well, you know, it's hard to say, but really, the test is objective. Test for active supervision is objective. A board, a state board should be able to assemble a paper record of what the governor reviewed. What did the governor decide? Why is it not sufficient enough to have the governor? If the governor approves the rule, why is that not sufficient under the statute to say that that is active supervision as it's defined under the statute? Because the requirements for active supervision, as enunciated by the Supreme Court and dental examiners elsewhere, require the supervisor to engage in independent and substantive review of the rule. It sounds to me then, and you would be able then to inquire of the governor, whether it's the governor of Alabama, Florida or Georgia. What exactly did you review? Did anyone lobby you? Did anyone talk to you? So you would be able to go into all those details as opposed to the governor just saying, yes, I'm going to allow this or no, I'm not going to allow this rule change under the Georgia's version of the APA. Well, just just saying I'm going to allow this or not allow this would, in our view, would not be active supervision. As I said, whoever the supervisor is. Excuse me, counsel. Isn't the problem here that when we look at it under the motion to dismiss standard we have allegations that the governor could not possibly have conducted active supervision, because he was not provided with the entire record that would have allowed him to do so. I believe I believe SmileDirect did allege that. And, you know, and in our view, we would agree with SmileDirect that if the supervisor, whoever the supervisor is, if the supervisor doesn't have sufficient information to conduct an independent and substantive review, there's not going to be active supervision. But it's your position, I think, that this setup where the governor has the authority and correct me if I'm wrong, but it's your position that this setup is just not good enough in and of itself, right? Well, no, that's not quite right. We don't have a problem with the state designating its governor as the supervisor of professional boards. The problem in this case is that the governor, in fact, as a matter of fact, did not do the active supervision that is required. So we don't have a problem with the, you know, the PRRA as the Georgia legislature drafted it, or in designating the governor as the supervisor. The problem is the governor just in effect issued a rubber stamp and didn't actually do the active supervision that the Supreme Court precedent required. Mr. Mintz, Mr. Mintz, if the governor's statement had simply said that the governor has reviewed the record and is actively supervising the board and thus certifies this rule, is that mere statement enough to take it to insulate that decision? I would say that the way you phrased it, that's a pretty conclusory statement. And no, I would not consider that to be sufficient. The governor or whoever the supervisor is has to engage in a de novo review, independent and substantive review of the rule. And that includes things like what is the effect of the rule on competition? Does the rule benefit the personal interests of the board members? What if the governor's statement says that I, the governor, have engaged in a substantive and de novo review and I hereby approve the rule? A conclusory statement, but that covers that base. No, I don't think a conclusory statement is what the Supreme Court precedent is asking for. OK, we've gone on almost we've almost doubled your time. And I think that's more than fair to your side. Mr. Kashtan, of course, went over a bit to Mr. General Pinson has saved five minutes for rebuttal. And I'm going to follow the same rule I have with all others who've had five minutes, not have Siri out of questioning. But General Pinson start. And if anyone wants to ask the question, feel free to jump in. Let's try to let's try to wrap it up. Thank you, Chief Judge Pryor. Just a handful of points, if I could, about severability and the public private distinction. A couple of other things, if possible. The this idea that because you can conceive of the state action unity as being about the scope of the Sherman Act means it just is a merits question doesn't get you there. If you ask any antitrust practitioner about what the antitrust merits are, what the cause of action is, they'll tell you that it's about whether the challenge conduct had unreasonably anti-competitive effects, whether it caused the plaintiffs an antitrust injury. They're not going to include state action immunity in the same breath because it's conceptually distinct. And maybe the best way to show that is if you look at Smile Direct's antitrust count of their complaint and the legal and factual allege allegations. Let me talk a moment about a point that Judge Brasher had raised earlier, which is when we overrule precedent, our stare decisis factors. I can only speak for myself, General Pinson, but on the first factor, I think you're in. You're in tough shape for me. And the problem is that since we've allowed these kinds of collateral appeals, mohawks come down, other Supreme Court decisions that have come down that suggest, at least to me, this is plainly our rule is plainly wrong. But I'm more interested in the other factors. It seems to me there really aren't any reliance interests that are at stake in states having the ability for these interlocutory appeals because they're still going to have the opportunity to appeal an erroneous determination about state action immunity following a final judgment and the workability problems go straight to what opposing counsel said about the delays inherent in piecemeal litigation. Could you talk about the second and third factors? Assume it's plainly wrong. Great, of course. Chief Judge Pryor, so I would say on workability, the question for workability, I don't think the piecemeal piece gets you there. Of course, that's inherent in any determination that a class of orders is immediately appealable. And I don't think that particularly if you carve out private parties from the rule, I don't think that this rule would be particularly unworkable. If there's a... I can see why, if it were an immunity from suit, it would be totally unworkable to wait to review that until after you've been subjected to the travails of litigation. If it truly is an immunity, though, from liability, it seems to me that having piecemeal litigation really is unworkable. So I don't think it is. And I think this case is actually a good example of that. Right. So in this case, the district court made a legal determination about the legal framework that would apply going forward in this case for the state action immunity doctrine. That's not going to change at summary judgment. There's not going to be another appeal at summary judgment about that legal question or those legal determinations. And it's our position that any factual issues that come up at summary judgment also wouldn't be appealable. So when you narrow the question to... Yeah, but one of the problems you're going to have is with the litigation interrupted with these kinds of appeals is, for the same reason we have statutes of limitation, witnesses are going to go away, memories are going to fade, evidence is going to disappear. And having that kind of disruption makes... ordinarily, we think it makes litigation itself unworkable. That's why we don't ordinarily have these kinds of interlocutory appeals. So I guess I would just reiterate that that's the same concern in any immediate appeal question. Right. And so it's a question about weighing that against the benefits. But not in the immunity from suit. You can actually say that's different in the immunity from suit situation because you really do lose that. And it's our opinion that functionally what we have here is something that should be treated as an immunity from suit because of the undue influence that antitrust scrutiny places on those officials. Can I ask one more question, Chief? Sure. You seem to be carving out a special place for antitrust cases. But what about interstate commerce challenges where the state alleges that it's a market participant? What's different about that sort of a case than an antitrust case where the state's involvement in and of itself is a huge factor in determining whether or not liability can attach at the end? Judge Jordan, we carve out antitrust for a couple of reasons. One is because this court and the Supreme Court and everyone sort of agrees that antitrust litigation in particular is a massive burden on defendants and causes the kind of behavioral effects that we're worried about in this context. So I just don't think you have that with the other cases. And then also the state action doctrine is largely treated as an immunity in something dealt with separately from the merits of the question, perhaps differently from those kinds of commerce cases. Thank you. Can I ask one additional question and follow up to Judge Jordan? Sure. Correct me if I'm wrong. Is there a request for damages in this case? That was dismissed on sovereign immunity grounds. Okay. So in the antitrust context, is there a threat of damages against someone who would serve on one of these boards or is that taken care of by sovereign immunity? It's our position that it would be taken care of under sovereign immunity and certainly that was the problem here. We don't, of course, view the damages claim as the only sort of threat or burden placed on the officials in that case, but the damages alone, at least under our view, would not be available against a board like this or board members. I've got one more question, if I may. What's your response to the spillover effects argument made by Mr. Kashtan that even if we have this case and we stick with it, setting aside whether it's right or wrong, that it's going to infect other areas of our jurisprudence in a problematic way? I don't think that's true at all. And I think what my colleague was commenting about was this immunity from suit versus defense to liability question. But fortunately, this court doesn't have to worry about that. It's our view that the Supreme Court has already moved away from that way of looking at it. So if this court gets a new case about immediate appealability in the future, it shouldn't be applying the immunity from suit label question as the way of figuring out whether that immediate appeal can go forward. Any other questions? Okay, Mr. General Counsel, why don't you take a half minute and wrap it up? Sure, I would just say despite the Chief Judge's apparent misgivings, we would ask this court to exercise jurisdiction in this case and to reverse the decision below. Thank you. Okay, thank you very much. We are adjourned for today and thank counsel. We have your case.